Adam U. Lindgren, City Attorney (SBN: 177476)
CITY OF MODESTO
1010 10th Street, Suite 6300
PO BOX 642
Modesto, CA 95353
Telephone: (209) 577-5284
Facsimile: (209) 544-8260

Blake P. Loebs (SBN: 145790)
bloebs@meyersnave.com
Kevin P. McLaughlin (SBN: 251477)
kmclaughlin@meyersnave.com
MEYERS, NAVE, RIBACK, SILVER & WILSON
555 12th Street, Suite 1500
Oakland, CA 94607
Telephone: (510) 808-2000
Facsimile: (510) 444-1108

Attorneys for Defendants
CITY OF MODESTO, JERRY RAMAR, JAIME COX, BEN KROUTIL,
JOSEPH BOTTOMS, TOM CICCARELLI and JEANNE CHANDLER

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARVEY HOLCOMB,<br><br>Plaintiff,<br><br>v.<br><br>JERRY RAMAR, a Modesto police officer; OFFICER KROUTIL, a Modesto police officer; OFFICER COX, a Modesto police officer; OFFICER BOTTOMS, a Modesto police officer; OFFICER CICCARELLI, a Modesto police officer; J. CHANDLER, a Modesto police officer; JOHN DOE and RICHARD ROE, Modesto police officers, the true names and exact numbers of whom are unknown at this time; CITY OF MODESTO, a municipal corporation,<br><br>Defendants. | Case No: 13-cv-01102-AWI-SKO<br><br>**DECLARATION OF JERRY RAMAR IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY PARTIAL SUMMARY JUDGMENT**<br><br>Date: September 21, 2015<br>Time: 1:30 p.m.<br>Courtroom: 2, 8th Floor<br><br>Judge: Hon. Anthony W. Ishii |

2503003.1

DECLARATION OF JERRY RAMAR IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

I, Jerry Ramar, declare and state:

1. I personally know the facts set forth in this Declaration and I have first-hand knowledge of them. If called as a witness, I could and would competently testify to such facts under oath. At the time of this incident in May, 2012, I was an officer for the City of Modesto Police Department.

2. On May 7, 2012, I was working as a police officer for the Modesto Police Department as an undercover officer in the MNET unit, which is the drug enforcement unit. That day, I was dressed in plain clothes and was driving an unmarked police vehicle. In the late afternoon, I was making a left turn to leave a Modesto Police Department parking lot.

3. As I exited the parking lot, there was a Toyota Rav4 traveling towards me at a high rate of speed on F Street, Modesto. I estimated his speed to be 35 mph in a busy commercial 25 mph zone. I understand that the driver of the vehicle was the Plaintiff, Harvey Holcomb. As I pulled out Holcomb nearly struck the side of my vehicle. Mr. Holcomb stopped his vehicle but then pulled his vehicle closer to mine, nearly striking it. I pulled out of the path of Holcomb. He then began honking his horn. The horn honking occurred after I was out of his path.

4. Mr. Holcomb then drove West on F Street to 10th Street where he stopped at the stop sign and remained there. I then stopped my car and put on my raid vest that clearly marked me as a police officer. During this time Mr. Holcomb remained stopped at the stop sign for an extended period of time, which prohibited westbound traffic from getting through the intersection. I then turned around to make contact with Mr. Holcomb. Mr. Holcomb had pulled forward and pulled to the right shoulder but did not park his vehicle within 18 inches of the curb. He also failed to park within the clearly marked parking lines and parked in a spot that was painted to prohibit parking in that spot. The parking on F Street was designed to park diagonal. Mr. Holcomb failed to park at the designed diagonal angle; instead he parked parallel to the curb.

5. I saw Mr. Holcomb and his passenger, whom I understand to be his son-in-law, Brian Turner and is 6'-7", 280 lbs (according to his driver's license), exited the vehicle. Mr. Holcomb stood up and raised his hands as if he was going to fight. I exited my vehicle and made contact with the subjects. I identified myself as a police officer and told Mr. Holcomb I was

1 stopping him because he was driving too fast and told him to get back in his vehicle. Mr. Holcomb said "fuck you, you don't have any authority over me." I told Mr. Turner to return to the passenger side of the vehicle and sit down. Mr. Turner failed to comply with my command. I instructed Mr. Turner several times more but he refused. Mr. Turner eventually walked to the front of the vehicle and remained there, but refused to sit down as I instructed.

6. I told Mr. Holcomb several more times to return to the seat of his vehicle but he refused. I told Mr. Holcomb that he was under arrest. I removed a pair of handcuffs and attempted to take Mr. Holcomb's left hand. Mr. Holcomb pulled away from me. I had already requested additional units for assistance so I waited. Officer Kroutil arrived and immediately came to my side of the vehicle. Officer Kroutil took Mr. Holcomb by his left hand and I took him by his right and escorted him to a nearby patrol car that had arrived. Mr. Holcomb was placed on the hood of the vehicle and handcuffed. I did not use any force on Mr. Holcomb except for the force used to pull him and direct him toward the patrol vehicle. He was handcuffed without using any wrist locks.

7. Shortly after being handcuffed, while against the car, Mr. Holcomb began to slump to the ground. I was unable to stop his fall, but Officer Kroutil and I helped guide him to the ground so that he would not be injured. Neither I nor Officer Kroutil used any force to cause Mr. Holcomb to fall to the ground. After I assisted Mr. Holcomb to the ground, I did not recall having any further physical contact with Mr. Holcomb.

8. After Mr. Holcomb was on the ground, he was assisted by other officers and I proceeded to interviewed Plaintiff's step-son, Mr. Turner. Mr. Turner told me that Plaintiff has a bad attitude and always gets him into trouble. He also confessed to me that as Plaintiff pulled over to the side of the road he told Mr. Turner that Plaintiff was pulling over so that he could fight. Mr. Turner admitted that he got out of the car to help Plaintiff engage in the altercation, but when he realized that I was a police officer, he returned to the front of the car.

9. When I encountered Mr. Holcomb, there was nothing about Mr. Holcomb's appearance that caused me to think he was disabled. I was not aware that Mr. Holcomb had a wheelchair in the back of his car until after it was pulled out of his vehicle, which was well after

he was handcuffed and on the ground. While I was at the scene, Mr. Holcomb never made a request related to any physical condition that he claimed to have that we did not accommodate, as far as I am aware. After he was on the ground, Mr. Holcomb claimed that he could not stand up and he was never forced to stand up, as far as I am aware. Mr. Holcomb asked for an ambulance an ambulance was called on his behalf.

10. An ambulance arrived and the ambulance attendant examined Mr. Holcomb. After he was examined, Mr. Holcomb was not transported to a hospital by the ambulance. I was not involved in that decision in any way. After the ambulance left, Mr. Holcomb was transported to the jail, which was just a few blocks away, by plain clothed officers pushing him in his wheelchair. Mr. Holcomb left the scene, in his wheelchair, a few minutes after the ambulance left. Plaintiff was cleared by the intake nurse, processed and placed in jail.

11. Plaintiff is charged with failing to obey a lawful order of a police officer in violation of Penal Code Section 148 and violation of the basic speed law, vehicle code section 22350(a).

12. The CAD Report for this incident, which indicates that the this call was cleared approximately 1 hour after it was initiated, does not reflect how long we were on scene with Mr. Holcomb. After we left the scene I forgot to inform Dispatch that the scene was clear. The scene was only officially cleared after Dispatch called me to ask me if the scene was clear, at which time I had already returned to the police operations building and been there for some time.

13. Based upon my review of the CAD Report, and my recollection, 13 officers were on scene for some portion of the subject incident in addition to myself. Many are identified in the CAD Report, but many of the MNET unit officers are not, which is not surprising because many of those officers have unmarked vehicles without computers.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed in Modesto, California, on August 16th, 2015.

J. RAMAR 11097
Jerry Ramar