1
2
3
4
5                    **UNITED STATES DISTRICT COURT**
6                    **EASTERN DISTRICT OF CALIFORNIA**
7

8    **HARVEY HOLCOMB,**                    **CASE NO. 1:13-CV-1102 AWI SKO**
9                    **Plaintiff**
10        **v.**                            **ORDER ON OBJECTIONS TO DR.**
                                            **BRAATON'S** *DE BENE ESSE*
11   **JERRY RAMAR, et al.,**               **DEPOSITOIN**
12                    **Defendants**
                                            **(Doc. No. 150)**
13
14

15        This is a civil rights case that arises out of a confrontation between Plaintiff Harvey

16   Holcomb ("Holcomb") and members of the City of Modesto Police Department.  Trial in this

17   matter is currently set for August 8, 2017.

18        Trial was previously set for October 18, 2016, but was vacated so that Holcomb could

19   respond to a motion in limine that was filed on October 14, 2016 ("the October MIL").  The

20   October MIL sought to exclude portions of the *de bene esse* deposition of Holcomb's treating

21   physician, Dr. Paul Braaton.

22        In December 2016, the Court granted in part and denied in part the October MIL and

23   limited Dr. Braaton's expert testimony to opinions that he formed during the course of Holcomb's

24   treatment.

25        On March 8, 2017, the Court set a new trial date of August 8, 2017, and also set a

26   telephonic trial confirmation date of July 25, 2017.  See Doc. No. 148.  In setting the new trial

27   date, the Court also included deadlines for the parties to reach an agreement regarding the

28   presentation of Dr. Braaton's deposition.  In light of the Court's ruling on the October MIL, the

parties were given to June 1, 2017, to reach an agreement with respect to which portions of Dr. Braaton's deposition would be played to the jury.  See id.  If the parties could not reach an agreement, then they were to submit briefing regarding the particular passages of the *de bene esse* deposition to which there remained a dispute.  See id.

On May 31, 2017, the parties filed a notice that an agreement had been reached as to a majority of Dr. Braaton's deposition testimony, but full agreement could not be achieved.

On June 15, 2017, the parties filed a joint brief that identified the specific parts of Dr. Braaton's deposition that were objectionable.  See Doc. No. 150.[1]  Defendants object to 11 excerpts and Holcomb objects to 3 excerpts.  See id.

The Court will examine each excerpt separately.

## **Legal Framework**

Rule 26(a)(2) provides for mandatory disclosures regarding expert witnesses.  See Fed. R. Civ. P. 26(a)(2); Republic of Ecuador v. Mackay, 742 F.3d 860, 865 (9th Cir. 2014). For testifying experts retained or specially employed to provide expert testimony, the expert is required to submit a detailed report.  See Fed. R. Civ. P. 26(a)(2)(B).  For experts who are not retained or specially employed to provide expert testimony, certain disclosures must still be made but a detailed report is not required.  See Fed. R. Civ. P. 26(a)(2)(C); Mackay, 742 F.3d at 865 n.1. "These experts typically include treating physicians . . . ." Mackay, 742 F.3d at 865 n.1.  "[A] treating physician is only exempt from Rule 26(a)(2)(B)'s written report requirement to the extent that his opinions were formed during the course of treatment." Goodman v. Staples the Office Superstore, LLC, 644 F.3d 817, 826 (9th Cir. 2011); see also Fielden v. CSX Transp., Inc., 482 F.3d 866, 871 (6th Cir. 2007) ("[A] report is not required when a treating physician testifies within a permissive core on issues pertaining to treatment, based on what he or she learned through actual treatment and from the plaintiff's records up to and including that treatment.").  Under this rule, as

---

[1] The Court notes that the parties identified the parts of the deposition at issue by not only listing the page and line numbers in the briefing, but also by providing a copy of the deposition transcript that identified by color those portions to which there was agreement, those portions to which Defendants objected, and those portions to which Holcomb objected.  The Court appreciates the parties' efforts to clearly and efficiently identify the last issues surrounding Dr. Braaton's testimony.

long as the opinions were formed during the course of treatment, a physician need not submit the detailed Rule 26(a)(2)(B) report and may offer opinions relating to the plaintiff's appearance and condition from the start to the end of treatment, the extent of the plaintiff's disability, the treating physician's treatment of the plaintiff, the treating physician's assessment of plaintiff's condition during and at the conclusion of treatment, the plaintiff's prognosis, causation, and the need for future treatment. See Alfaro v. D. Las Vegas, Inc., 2016 U.S. Dist. LEXIS 113949, *36-*37 (D. Nev. Aug. 24, 2016); Israeli v. Ruiz, 2015 U.S. Dist. LEXIS 97650, *10-*11 (S.D. N.Y. July 27, 2015). Opinions that were not formed during the course of treatment, including opinions that were formed after viewing "outside materials," must be presented in a detailed Rule 26(a)(2)(B) report. See Goodman, 644 F.3d at 826; Fielden, 482 F.3d at 871. The use of "hypotheticals" is generally inappropriate with respect to the opinions of a treating physician. In re C. R. Bard, Inc., 948 F.Supp.2d 589, 615 & n.3 (S.D. W. Va. 2013); Whitley v. Yarber, 2013 U.S. Dist. LEXIS 186430, *11-*12 (N.D. Ga. 2013). The proponent of evidence, including expert testimony, bears the burden of showing its admissibility. See In re Oracle Corp. Sec. Litig., 627 F.3d 376, 385 (9th Cir. 2010); United States v. 87.09 Acres of Land, 530 F.3d 899, 904 (9th Cir. 2008).

**Testimony At Issue**

**1.** **Page 11:21 to Page 12:4**

In relevant part, Dr. Braaton testified:

Q:     All right. Now when in your treatment and meetings with [Holcomb], did you get the impression he was aware of his limitations?

**A:     Oh, yeah. He was really aware of his limitations.**

Q:     And - -

**A:     I mean, he was going around searching for answers to his autoimmune disease for quite some time. And went and saw a number of physicians at different centers.**

*Defendants' Objections*

Defendants object, without elaboration, that the above excerpts are speculation, vague, non-responsive, and lack foundation.

*Discussion*

The Court will overrule Defendants' objections.  Dr. Braaton's answer is responsive to the question posed, and the question was expressly based on Dr. Braaton's treatment and meetings with Holcomb.  The questions and answers for this excerpt are not so vague or speculative that it is necessary to strike this testimony.

**2.    Page 14:24 to Page 15:15**

Dr. Braaton testified in pertinent part:

Q:    Would that surprise you if he used a wheelchair now and then?

**A:    No, it wouldn't.  If he was walking long distances and had a lot of pain.**

Q:    Okay.  So if he had to walk let's say a block or two, do you think it would have been
       appropriate for him to use a wheelchair?

**A:    If he had a lot of pain, I -- so I would have to really review, go back through the
       records and see if we wrote him a prescription for a wheelchair.**

Q:    Sure.

**A:    I wouldn't be surprised if at some point he did.  And then he used those on any kind
       of -- whenever he wanted to -- whenever he felt that he needed – he wasn't able to
       walk the distance, like maybe going into a store like Costco or to the mall. He would
       use a wheelchair.  I -- I would have left that up to him.**

*Defendants' Objections*

Defendants object that this excerpt is speculation, irrelevant, and beyond the scope of a treating physician because Dr. Braaton did not prescribe a wheelchair, never saw Holcomb in a wheel chair, and what surprises Dr. Braaton is not relevant.

*Discussion*

The Court will overrule Defendants' objections.  The use of a wheelchair is relevant because Holcomb contends that he used a wheelchair from time to time and that his wheelchair would have been visible to Defendant Ramar when he approached Holcomb's vehicle.  The Court understands that Ramar will testify that he did not see the wheelchair.  Also, the use of a wheelchair is relevant in that it can help the jury to understand the extent of Holcomb's condition,

4

which in turn can help the jury to resolve the conflicting testimony of the parties. Furthermore, the testimony is not outside the scope of a treating physician. Dr. Braaton is permitted to explain the nature and extent of Holcomb's condition/symptoms. Finally, Dr. Braaton testified immediately before the objectionable testimony that Holcomb may have been in a wheelchair sometimes, but that he didn't remember Holcomb in a wheelchair per se. See Braaton Depo. 14:19-23. That is, contrary to Defendants' objection, Dr. Braaton did not testify that he has no memory of Holcomb in a wheelchair during the course of treatment.

**3.      Page 15:16 to Page 16:5**

At Page 15:16 to Page 16:5, Dr. Braaton is shown a picture of Holcomb in which Holcomb is sitting in the door of an automobile and holding a cane.[2]

*Parties' Arguments*

Defendants object that the testimony is irrelevant, unduly prejudicial, cumulative, and beyond the scope of a treating physician. Defendants argue that Dr. Braaton can and did describe Holcomb's condition and need for a cane. The photo is used to suggest that Dr. Braaton believed that Holcomb would have used a cane in this circumstance and to get out of the specific car. The photo adds nothing relevant to Dr. Braaton's testimony regarding Holcomb's need for and use of a cane, and the photo is too close to the facts of this case for Dr. Braaton to comment on. Further, using the photo is a way to circumvent the Court's ruling that Dr. Braaton cannot testify that Holcomb most likely would have used a cane and leaned on the door to get out of the car.

Holcomb responds that it would be unfair to strike this portion of the deposition because, as a *de bene esse* deposition, there is no way to reframe the question and Defendants made no objection during the deposition. Holcomb also responds that the photo has not been excluded, and it can be authenticated by any witness. Further, the questions simply ask the doctor to say there is a cane and the photo was in a car. It does not imply an opinion by the doctor.

*Discussion*

Initially, the objection that the testimony is beyond the scope of a treating physician is not persuasive. Treating physicians are percipient witnesses and may give non-expert testimony that

---

[2] The picture was not been provided to the Court.

is not constrained by Rule of Evidence 702 or Rule of Civil Procedure 26(a)(2).  See <u>Alfaro</u>, 2016 U.S. Dist. LEXIS 113949 at *37 ("The disclosure obligation stated in [Rule 26(a)(2)(C) 'does not apply to facts unrelated to the expert opinions the witness will present.'") (quoting Fed. R. Civ. P. 26 Advisory Comm. Notes to 2010 Amendments).  As someone who knows what Holcomb looks like, Dr. Braaton may authenticate a picture of Holcomb.

Nevertheless, the Court does not see how this portion of Dr. Braaton's deposition is helpful or probative.  Dr. Braaton, as well as Holcomb, will be able to testify about Holcomb's use of or need for a cane.  In fact, Holcomb himself could conceivably use the photo as a demonstrative aid in describing how he uses or needs a can to enter or exit his automobile.  However, it is unclear how the photo aids Dr. Braaton's testimony, or what purpose is served by having Dr. Braaton describe the photo.  Furthermore, when the Court ruled on Defendants' October 2016 motion in limine, it prohibited Dr. Braaton from offering an opinion that "Plaintiff most likely would have used a cane and leaned on the door to get out of the car." Admitting this testimony comes close to violating the Court's prior ruling.  Therefore, given the potentially cumulative nature of the testimony, the absence of any clear probative value to Dr. Braaton testifying about the photo, and the Court's prior in limine ruling, Defendants' objection is sustained.

**4.**      **Page 17:5 to Page 17:12**

In relevant part, Dr. Braaton testified:

Q:     Do you think, when you say "pretty unsteady" is that something that you would expect a lay person to be able to notice?

**A:**     **Probably.  Because I don't think he would be able to walk in a straight line.  And he would be probably swaying a little bit.**

Q:     Okay.

**A:**     **Swaying.**

*Parties' Arguments*

Defendants object that it is speculative about what a "lay person" might notice.  Further, the question refers to Dr. Braaton's testimony that Holcomb would be "pretty unsteady" when walking 15 feet with his hands clenched.  This opinion was previously excluded by the Court.

Cutting out the excluded "context" of the passage is an attempt to circumvent the prior order.

Holcomb responds that there was no objection during the *de bene esse* deposition and thus, there is no longer a way to reframe the question. Thus, the objection should be deemed waived. Further, the testimony specifically describes Dr. Braaton's observation of Holcomb's gait.

*Discussion*

The Court does not find that the opinion is fatally speculative. A physician would have a good idea about how noticeable or obvious a mobility impairment would be to an untrained eye. Nevertheless, the Court agrees with the remainder of Defendants' objection. The context of the answer is highly important. The question is attempting to get a clarification regarding what Dr. Braaton meant by "pretty unsteady," and "pretty unsteady" referred to a line of questioning that the Court has excluded. "Pretty unsteady" was not a generic description of Holcomb's gait or stability, it was a description of Holcomb's ability to walk fifteen feet without a cane and with clenched fists. Without the context, the question is confusing and misleading. Because the context is excluded, this section will also be excluded. Defendants' objection is sustained.

**5.**     **Page 18:21 to Page 19:3**

Dr. Braaton testified in pertinent part:

Q:     Okay. So, again, would that be something that would be noticeable you think to a lay person? I mean, the difficulty walking backwards?[3]

**A:**     **I think he would have been very unsteady on his feet walking backwards and most people could have seen that.**

*Defendants' Objections*

Defendants object that the excerpt is speculation as to what a "lay person" might notice.

Holcomb responds that the Court has permitted Dr. Braaton to offer opinions about Holcomb's ability to walk backwards.

*Discussion*

The Court will overrule the objection. The obviousness or noticeability of a mobility problem could be the subject of both lay opinions under Rule of Evidence 701 or expert opinions

---

[3] Defense counsel objected that the question called for speculation.

under Rule of Evidence 702, depending on the nature of the mobility problem. As a physician with experience concerning human mobility issues, Dr. Braaton would be aware of a number of different mobility problems. Some mobility problems might be extremely subtle and require specialized training to detect. <u>E.g.</u> Braaton Depo. at 29:23-30:6. Others might be extremely obvious and require no training whatsoever. Dr. Braaton may discuss how clear or obvious Holcomb's mobility problems were.

**6.**     **Page 23:2 to Page 23:14**

In pertinent part, Dr. Braaton testified:

Q:     He's no longer with your practice?

**A:**     **He's at Kaiser. He makes a lot more money at Kaiser.**

Q:     Okay. Fair enough. Let me back up before we get into this. Since the September 6 deposition, have you had an opportunity to speak with Mr. Boskovich?

**A:**     **No.**

Q:     Communicated with anybody from his office?

**A:**     **Me personally, no, I have not.**

Q:     Did you do anything to get ready for your testimony here today?

**A:**     **No.**

*Parties' Arguments*

Defendants object that this testimony is irrelevant.

Holcomb responds that he cannot reframe the question, and no objections were made during the *de bene esse* deposition. Moreover, the testimony at issue was elicited by Defendants.

*Discussion*

The Court agrees with Defendants that there appears to be no relevance to the questions and answers that deal with Dr. Braaton's communications with Holcomb's counsel. The Court will sustain the objection as to lines 5 to 15. However, the Court finds some relevance with respect to 2 to 4. The "He" that is referenced is Travis Wolfe, Dr. Braaton's former physician's assistant. That he is no longer with Dr. Braaton is relevant background information because testimony concerning Wolfe and records that he created will be presented to the jury.

**7. Page 28:7 to Page 28:20**

Dr. Braaton in relevant part testified:

Q:     Okay. Again, in that same time frame, May of 2012, would Mr. Holcomb have been able to walk all the way to three to four feet behind the vehicle while holding his hands up with clenched fists without assistance?

**A:     With great difficulty.**

Q:     But he was capable of doing that; correct?

**A:     I mean, I would think he would have great difficulty walking.**

Q:     But -- understood, having great difficulty.  But he was capable of -- he was capable of walking all the way to three to four feet behind the vehicle while holding his hands up with clenched fists without assistance; correct?

**A:     If he made it there without falling, yes, he was.**

*Parties' Arguments*

Defendants object that the testimony is beyond that of a treating physician.  The excerpt contradicts the Court's prior ruling that Dr. Braaton could not testify about Holcomb's ability to walk with his hands up and fists clenched without assistance.

Holcomb replies that, in response to a question regarding clenched fists, all Dr. Braaton was willing to say is that Holcomb would have had great difficulty walking.  Thus, Dr. Braaton is only rendering an opinion about walking, not clenched fists.

*Discussion*

The Court agrees with Defendants' characterization of the issue.  The Court has ruled that opinions regarding Holcomb's ability to walk without assistance with his hand up and fists clenched were opinions that were not formed during the course Dr. Braaton's treatment of Holcomb.  The excerpt at issue is expressly dealing with Holcomb walking with clenched fists. Therefore, Defendants' objection is sustained.

**8. Page 28:21 to Page 29:22**

In pertinent part, Dr. Braaton testified:

Q:     Now, after walking three to four feet behind the car, if he were to walk backwards to the

1 driver's side door, he would have had great difficulty; correct?

2 **A:** **Yes.**

3 Q: And that's because patients who have difficulty heel toe ambulating also have difficulty

4 with toe heel ambulating; correct?

5 **A:** **Yeah. Well, he would have -- he couldn't propel off the front of his foot correctly. So**

6 **he would have had a lot of difficulty doing that.**

7 Q: That's from the perspective of walking with people who we normally regard as having a

8 normal unimpaired stride; correct?

9 **A:** **Yes.**

10 Q: Now instead of trying to toe heel ambulating, he slid or shuffled his feet backwards. Now,

11 it would have been easier for him to back up to the driver's side door moving in that

12 fashion; correct?

13 **A:** **Well, he would have -- that would be -- he might have been able to shuffle his legs**

14 **backwards somehow. But that would have been very noticeable and very – I think it**

15 **would have been difficult. It would have been high fall risk.**

16 Q: But it would have been easier to shuffle or slide his feet back than to try to toe heel

17 ambulate backwards; correct?

18 **A:** **I don't think he could have done that.**

19 *Parties' Arguments*

20 Defendants object that this passage goes beyond the scope of a treating physician and does

21 not relate to any observations Dr. Braaton made while treating Holcomb.

22 Holcomb responds that the testimony was elicited by Defendants and goes directly to his

23 ability to walk backward, which the Court has allowed.

24 *Discussion*

25 The Court finds that the testimony at 28:21 to 29:9 is admissible. This excerpt deals with

26 Holcomb's ability to walk backwards from three to four feet behind his car. At the hearing on the

27 October MIL, the Court ruled that Dr. Braaton could testify about Holcomb's ability to walk

28 backwards, as well as any risks from walking backwards, because Dr. Braaton had formed such

opinions during the course of his treatment of Holcomb. Therefore, the subject matter of the question is not beyond the scope of Dr. Braaton's testimony as a treating physician. Further, the questions at 28:21 to 29:9 are related to and in the same form as the questions at 28:1 to 28:6, which asked about Holcomb ability walk forward from the driver's seat to three or four feet behind his car without assistance. <u>See</u> Braaton Depo. 28:1-28:6. The parties agree that the testimony at 28:1 to 28:6 is admissible. Given these considerations, Defendants' objections to the testimony at 28:21 to 29:9 are overruled.

With respect to the testimony at 29:10 to 29:22, that testimony discusses sliding or shuffling feet, instead of toe-heel ambulation/walking. In an order following the October MIL hearing, the Court noted that the nature of the tests administered and the corresponding results, the treatment, and observations of Dr. Braaton were sufficient to show that Dr. Braaton had formed an opinion about the ability of Holcomb to walk backwards. <u>See</u> Doc. No. 48 at 1 n.1. In his depositions, Dr. Braaton testified in essence that the tests administered for walking forward also reflect on a person's ability to walk backward. <u>See id.</u> at 18:16-20, 30:19-25, 46:13-20. However, Dr. Braaton indicated that he conducted heel-toe walking tests. <u>See</u> Braaton Depo. 11:15-19, 12:9-14. The Court is not aware of any tests administered by Dr. Braaton that involved the sliding or shuffling of feet. As such, questions regarding shuffling or sliding appear to be hypothetical questions beyond the scope of Dr. Braaton's actual treatment. Hypothetical questions are generally improper with respect to the expert opinions of non-retained treating physicians. <u>See In re C. R. Bard</u>, 948 F.Supp.2d at 615 & n.3; <u>Whitley</u>, 2013 U.S. Dist. LEXIS 186430 at *11-*12. Because there is an insufficient indication that Dr. Braaton formed any opinions during the course of his treatment about Holcomb's ability to shuffle or slide his feet, Defendants' objections to the testimony at 29:10 to 29:22 are sustained. <u>Cf.</u> <u>Goodman</u>, 644 F.3d at 826.

**9.** **Page 29:23 to Page 30:18**

Dr. Braaton testified in relevant part:

Q:     Now, if he was moving backwards, shuffling or sliding his feet, in your opinion would that have been noticeable to someone standing directly in front of him as opposed to several feet away?

1    **A:    I think -- well, I would have noticed it right away, standing in front of him. Because**

2          **you can just see that it's not normal. But if you're -- I can't say for an untrained**

3          **person, but probably it would be noticeable.**

4    Q:    Well, if -- if an untrained person is standing right in front of him, face to face, not looking

5          at his feet but concentrated on his face and upper body, he wouldn't be noticing -- he

6          wouldn't be .in a position to notice if Mr. Holcomb was having difficulty sliding or

7          shuffling his feet backwards; correct?

8    **A:    I don't know how to answer that except to say that I think his body would be**

9          **somewhat swaying a little bit from being unsteady on his feet when he was walking**

10         **backwards.**

11         *Parties' Arguments*

12         Defendants object the excerpt is speculative, does not relate to any observations Dr.

13   Braaton made and thus, is beyond the scope of a treating physician.

14         Holcomb argues that the excerpt goes directly to his ability to walk backwards and thus, is

15   admissible.

16         *Discussion*

17         The Court finds that this excerpt suffers from the same problem as the excerpts at 29:10 to

18   29:22.  This excerpt relates to Holcomb's ability to shuffle or slide backwards, it does not relate to

19   his ability to walk toe-heel backwards.  As explained above, there is no indication that Dr. Braaton

20   formed an opinion about Holcomb's ability to shuffle or slide.  Therefore, the question is an

21   improper hypothetical to a non-retained treating physician.  Defendants' objection is sustained.

22         **10.    Page 33:25 to 34:13**

23         Dr. Braaton testified in relevant part:

24   Q:    Now, when you're ambulating your balance, part of that, your ability to maintain your

25         balance, part of that is a function of stride length; correct?

26   **A:    Well, stride length is part of it, yeah.  Usually people with impaired balance shorten**

27         **their stride length because they feel more stable when they're walking with a**

28         **shortened stride length.**

Q:     When you shorten your stride length, you're able to avoid falling over from losing balance; correct?

**A:     Not always, but it helps.**

Q:     Okay. And in terms of walking or ambulating backwards, if you shorten your stride length, that also helps maintain your balance; correct?

**A:     That would.**

*Parties' Arguments*

Holcomb argues that this testimony violates the Court's ruling on the October MIL. The initial questions are not directed to walking backwards and thus, are outside the scope of a treating physician.

Defendants argue that the excerpt is relevant and proper since it goes directly to the issue of how someone with Holcomb's condition can maintain his balance when walking forwards and backwards by shortening their stride.

*Discussion*

Based on Holcomb's objection, it may be necessary to reiterate or clarify the Court's ruling on the October MIL. As discussed above, the Court limited Dr. Braaton's expert testimony to that of a treating physician. Dr. Braaton may testify as to any opinions that he formed during the course of his treatment of Holcomb. The October MIL identified 14 excerpts from Dr. Braaton's deposition. The Court found that all but one of Dr. Braaton's opinions were formed outside the course of his treatment of Holcomb. That one opinion involved Holcomb's ability to walk backwards. When the Court held that this one opinion was admissible because it was within the scope of treating physician, the Court was not holding that Dr. Braaton could only express opinions relating to Holcomb's ability to walk backwards. The Court set a general rule, i.e. opinions formed during the course of treatment are admissible, and then applied that rule to the 14 specific deposition excerpts that were challenged by Defendants.

With this clarification in mind, the Court is not satisfied that the excerpt is admissible. The excerpts are generalized questions about stride length. Dr. Braaton stated that people with impaired balance "usually shorten," not "always shorten," their stride length, and that a shortened

stride length does "not always" help people to avoid falling. The problem with the testimony is twofold. First, the questions do not specifically relate to Holcomb or his particular condition. The generalities mentioned by Dr. Braaton may apply to Holcomb or they may not. Second, there is no indication that Dr. Braaton formed any opinions that a shortened stride length would help Holcomb avoid falling. Therefore, the Court agrees with the objection that the testimony is outside the scope of a treating physician. Plaintiff's objections are sustained.

**11.    Page 34:14 to Page 39:11**

In pertinent part, Dr. Braaton testified:

Q:    As an orthopedist, it would be important to have an understanding of any physical injuries your patient may have; correct?

**A:    Yes.**

Q    And as an orthopedist, if you observed any new physical injuries during an examination, it would be your custom and practice to note that in your report of the examination; correct?

**A:    I will say usually I focus on -- if I -- if I'm seeing a patient for a whole body review, yes. If I'm seeing him for a specific body part,. like foot and ankle for Workmen's Comp, which he was for a specific foot and ankle, so I would notice the other foot. And I would examine that, but not necessarily comment on other injuries because I'm contracted by Workmen's Comp, if you will, to just take care of -- I can only see him for X problem.**

Q:    But if a patient complained of back or neck pain, it would have been your custom and practice to note that in your report of the examination; correct?

**A:    Not always. A lot of times I just tell him, you have got to go to your primary care physician for that because I don't really treat that. So I mean, occasionally I do. But it's not something I do all the time either.**

Q:    Okay.

**A:    And that would have been also something, you know, then is it a work-related injury or not? And that's something I really don't usually evaluate either because I'm sort of a consultant in the Workmen's Comp for -- specifically for complex foot and ankle**

14

1 **problems.**

2 Q: Okay. I would like to take you back to Exhibit HH. Now, again, that's the visit where he

3 was seen by your physician's assistant, Travis Wolfe; correct?

4 **A: Is this HH? HH, yeah. He was seen by Travis Wolfe, yes.**

5 Q: Yes. You have that in front of you?

6 **A: Yes, sir.**

7 Q: Now, according to this report, Mr. Holcomb complained of significant fatigue and muscle

8 weakness; correct?

9 **A: Yes.**

10 Q: It was noted that there was marked swelling for the anterior and lateral aspect of the ankle;

11 correct?

12 **A: Yes.**

13 Q: And it was also noted there was pain to palpation over most of his ankle?

14 **A: Yes, right.**

15 Q: Palpation, that's where the practitioner touches the ankle; correct?

16 **A: Yes.**

17 Q: And it was also noted that both hands were swollen?

18 **A: Yes.**

19 Q: Okay. And both feet were swollen?

20 **A: Yes.**

21 Q: Okay. Did -- was there any observation of any swelling on his wrists?

22 *Objection: Objection. Calls for speculation.*

23 **A: Well, I don't know. The hands were. So I don't know if the wrists were swollen or**

24 **not. I didn't see him that day. So –**

25 Q: Okay. Did he complain of pain or numbness in his hands?

26 *Objection: Objection, calls for speculation.*

27 **A: Well, that's not noted in the note here.**

28 Q: Did he complain of pain or numbness in his wrists?

1   *Objection:     The same objection.*

2   **A:     That's not noted here either.**

3   Q:     Did Mr. Holcomb indicate that he'd sustained any leg injuries recently?

4   *Objection:     Objection. Calls for speculation. The document speaks for itself.*

5   **A:     That's not – that's not noted here either.**

6   Q:     Okay.  If he had complained of a leg injury since you were treating his ankle and foot,

7          that would have been something that would have been noted in the report; correct?

8   *Objection:     Calls for speculation.*

9   **A:     Yeah.  I didn't see him that day.  I would have probably noted it.  And I would hope**

10          **that Travis would have, too.**

11   Q:     That would have been the custom and practice of your office?

12   **A:     In general, yes.**

13   Q:     And that would be something required by the standard of care; correct?

14   **A:     Uh-huh, yes.**

15   Q:     Yes?  Did Mr. Holcomb present with bruising anywhere that was observable?

16   *Objection:     Objection. Calls for speculation.*

17   **A:     Well, it's not noted here on the physical exam on the parts that we examined. We**

18          **looked at his hands and feet.  He was mostly -- he was talking about his hands and**

19          **feet mostly because he was concerned of the autoimmune reaction to the implant or**

20          **some kind of unknown autoimmune -- we don't know what it was to, but he had an**

21          **autoimmune process of some sort going on.**

22   Q:     If any bruises were observed on his hands or wrists, those would have been noted in the

23          record; correct?

24   **A:     Well, I would -- I would -- I don't know.  I would think so.**

25   Q:     And that would be within the standard of care; correct?

26   **A:     Well, if Travis examined his hands and looked at his hands, he probably would have**

27          **noted that.**

28   Q:     Okay. His hands and also if he noticed any bruising on his wrists; correct?

**A:** **Yeah. I don't know how -- how long, if he had a long-sleeved shirt on or not. But where they would see the wrist or not. But I think he probably would have noticed that there were bruising and swelling on his hands.**

Q: And if he noticed that, it would have been the custom and practice to record that in the report; correct?

**A:** **Yes.**

*Plaintiff's Objection*

Holcomb reiterates his objections made during the deposition that the questions call for speculation because they require Dr. Braaton to speculate as to what Mr. Wolfe would have done. Wolfe was not deposed, and Defendants cannot substitute speculative evidence for a deposition.

*Defendants' Response*

Defendants argue that the excerpts are admissible for several reasons. First, much of the testimony that Holcomb wishes to admit from Dr. Braaton is based on Dr. Braaton's review of the medical records. Holcomb cannot rely on the customs and records of Dr. Braaton's office only when it is beneficial for him to do so. Second, the questions go directly to the manner in which Dr. Braaton and his physician's assistants (on whom he relies) keep their records and what those records mean. Third, it is well established that treating physicians can rely on the record of others in their own offices when expressing opinions, as Dr. Braaton does repeatedly when testifying on other matters. Fourth, Dr. Braaton did not speculate about how records for his office are kept, rather he testified about the custom and practice of his office. Fifth, Dr. Braaton did not speculate about whether Holcomb made certain complaints on the dates that Dr. Braaton did not examine him. He responded that he did not conduct the examination and the records make no mention of complaints or injuries. Sixth, the medical records made by Wolfe will be in evidence, and Dr. Braaton's testimony about what those records mean, the custom and practice in the industry, and his office for recording complaints are all relevant to Dr. Braaton's testimony and in understanding the medical records. Seventh, the excerpts were questions on cross-examination after Holcomb's counsel opened the door to Dr. Braaton relying on medical records from his facility to support his opinions.

*Discussion*

There is no dispute that Dr. Braaton can rely on the medical records from his office, even if a physician's assistant made a particular record.[4]  It also appears to be undisputed that medical records from Dr. Braaton will be admitted into evidence.  Thus, questions to Dr. Braaton regarding the meaning of the records or the custom and practice for keeping and creating those medical records are relevant and appropriate.  In terms of Holcomb's objections that questions call for speculation, the answers given were not speculation.  Cf. Ninth Circuit Mode Instruction 1.9 "What Is Evidence" (stating *inter alia* that a witness's sworn testimony is evidence); Ninth Circuit Model Instruction 1.10 "What Is Not Evidence" (stating *inter alia* that an attorney's question is not evidence).  Dr. Braaton either stated that he did not know, that there was no notation in the record on the subject, or explained situations in which a complaint that was given may not actually be noted.  Therefore, Holcomb's objections are generally overruled.

However, the Court is concerned about excerpts that discuss the standard of care.  The standard of care is generally a negligence concept and it is not at issue in this case.  What is at issue is the particular practices and customs of Dr. Braaton's office.  To the Court's knowledge there is no expert testimony that criticizes Dr. Braaton's record keeping practices as falling below the standard of care.[5]  The Court does not wish to inject potentially confusing legal concepts and standards that are not at issue.  It is enough for the jury to hear Dr. Braaton describe the custom and practices of his office, without the need for discussing "the standard of care."  Therefore, questions and answers relating to the standard of care (38:3-5, 38:22-25) will not be permitted under Rule of Evidence 403.

**12.    Page 40:17 to 41:12**

Dr. Braaton testified in relevant part:

Q:    If Mr. Holcomb had told you or Mr. Wolfe in May of 2012 that he's been injured in an

---

[4] Physician's assistants work under the direct supervision of a licensed medical doctor.  See Cal. Bus. & Prof. Code § 3502; Duel v. Latino Health Servs. Med. Grp., 2002 Cal.App. Unpub. LEXIS 10814, *9-*10 (Nov. 21, 2002); see also Walker v. Bakersfield Family Med. Grp., 2009 Cal.App. Unpub. LEXIS 5863, *8 (July 22, 2009).

[5] Inferentially, if there was an expert who opined that Dr. Braaton's records did not meet the standard of care, a jury might consider that fact in assessing the credibility of Dr. Braaton's records and testimony.

1  incident with the police, that would have been reflected in the May 11, 2012 medical

2  report; correct?

3  *Objection:        Calls for speculation.*

4  **A:     I didn't see him and so I don't know if Travis would have included it or not.  He may**

5  **or may not have, if he just mentioned it in passing and wasn't relating it to some**

6  **specific physical problem.  So I mean, I can't really -- I can't answer that question.**

7  Q:     Well, putting Travis aside, had Mr. Holcomb told you that he's been injured in an

8  incident with the police where he sustained an injury, is that something you would have

9  included in your report?

10 **A:     If there were specific physical findings that I was evaluating, I would have included it.**

11 Q:     And the May 11, 2012 report doesn't say anything about an incident with the police;

12 correct?

13 **A:     No, it does not.**

14 *Parties' Arguments*

15 Holcomb objects that the question calls for speculation and irrelevant information.  Dr.

16 Braaton did not write the note, so his personal practice is irrelevant.

17 Defendants respond that the question is relevant because it goes directly to the issue of

18 record keeping in Dr. Braaton's office.  It allows the jury to conclude that that the absence of any

19 statement by Holcomb within the medical records is at least some evidence that Holcomb did not

20 suffer any of those injuries.  Although Holcomb is correct that the Dr. Braaton did not write the

21 note, the custom and practice in the industry is to record specific physical findings or complaints,

22 and this was the practice in Dr. Braaton's office.

23 *Discussion*

24 The Court finds that parts of the excerpts are admissible and parts are not.  Dr. Braaton

25 explained that he did not see Holcomb, did not know how (if at all) Holcomb may have mentioned

26 the incident or complaints about pain from the incident, and that Wolfe may or may not have

27 included Holcomb's information (if any) concerning the May 7 incident.  This question and

28 answer are similar to the above questions regarding the nature of record keeping in Dr. Braaton's

office.  Therefore, Pages 40:17 to Pages 41:2 are admissible.

Dr. Braaton was also asked whether the medical records for May 11, 2012, indicate that Holcomb said anything about the May 7 incident, to which he replied it does not.  That question is similar to other admissible questions concerning the contents of the medical record for May 11, 2012.  Having Dr. Braaton testify as to the record's content is appropriate.  Therefore, lines 41:10 to 41:12 are admissible.

However, the excerpt is centered on the medical record for May 11, 2012.  Dr. Braaton did not see Holcomb on that date, but did provide answers that related to the practice of the office. Injecting information about what Dr. Braaton might have done if he had seen Holcomb on May 11 is a confusing and misleading hypothetical that goes beyond the May 11 excerpt.  Therefore, Holcomb's objections to lines 41:3 to 41:9, which asks Dr. Braaton what he would have done, are sustained.

### **13.**    **Page 45:16-45:6**

In pertinent part, Dr. Braaton testified:

Q:    Can you give me an approximation of what the odds were that he would have a miraculous recovery on May the 7th of 2012, been able to walk normally, clench his fists, walk backwards and then come into you a month later and then be right back where he was before?[6]

**A:    He was a pretty -- in terms of his examination, if you look back through the notes, up until he got on this new medicine, he was pretty stable in his exam.  It wasn't really altering that much in terms of his ability to walk and pain.  In fact, it was kind of getting progressively worse at times.  So I would not have expected there to be any difference from -- in six to nine months.**

*Parties' Arguments*

Defendants object that the Court has excluded testimony about how Holcomb could function "with clenched fists."  The testimony relates to the particular facts of this case, and not to any observations that Dr. Braaton made, thus, it is beyond the scope of a treating physician.

---

[6] Defense counsel objected that the answer called for speculation.

Finally, to the extent that Dr. Braaton's testimony does not relate to excluded material, it is non-responsive because the question specifically included excluded issues.

Holcomb responds that Defendants have brought into issue Dr. Braaton's ability to opine on Holcomb's condition on the date of the incident because Holcomb was not seen until a date after the incident. The question simply asks Dr. Braaton to explain prior testimony elicited by Defendants. Further, it is the answer that is the evidence, not the question, and the answer does not mention clenched fists, rather, it mentions symptoms and the ability to walk.

### Discussion

The Court will overrule Defendants' objection. In the questions immediately preceding this excerpt, Dr. Braaton confirmed that, in response to questions by defense counsel, he had not seen Holcomb on May 7, 2012 (the date of the incident). See Braaton Depo. 45:12-15. The excerpt now at issue is clearly attempting to obtain evidence concerning Holcomb's physical condition on the date of the incident in order to address the questions posed by defense counsel. It is an appropriate inquiry. Further, Holcomb was under Dr. Braaton's care as of May 7, 2012. The question mentions Holcomb's ability to walk forwards and his ability to walk backwards, both of which are areas in which Dr. Braaton may offer opinions. Dr. Braaton's answer to the question is expressly based on examinations of Holcomb, and the answer dealt with Holcomb's ability to walk and the pain Holcomb experienced, which are proper treating physician opinions. It is true that the question mentions clenched fists, but there is no elaboration regarding clenched fists in the question, and Dr. Braaton does not mention clenched fists in his answer. Cf. Ninth Circuit Mode Instruction 1.9 "What Is Evidence" (stating *inter alia* that a witness's sworn testimony is evidence); Ninth Circuit Model Instruction 1.10 "What Is Not Evidence" (stating *inter alia* that an attorney's question is not evidence). Again, Dr. Braaton's answer is in terms of examinations of Holcomb. The phrase "clench his fists" is simply part of a string of conditions/actions, it does not modify "walk normally" or "walk backwards." That is, the phrase is a stand-alone condition, and it does not appear to be material to the question or, more importantly, the response. The phrase's inclusion in the question is not so confusing, misleading, or prejudicial as to warrant exclusion of the entire excerpt under Rule of Evidence 403.

**14.** **Page 46:6 to 46:12**

Dr. Braaton testified in relevant part:

Q:    And when you said that it was stable, you meant that it was -- his condition was essentially unchanged?

**A:**    **Yes.**

Q:    Okay.

**A:**    **That's why I put him permanent and disabled in the June visit.**

*Parties' Arguments*

Defendants object that any testimony regarding clenched fists has been excluded. The foundational question to which the question relates deals with Holcomb's ability to walk backwards and clench his fists. Merely cutting off the previous excluded question is an attempt to circumvent the court's prior ruling. If the excluded question is omitted, the question and answer make no sense. Further, the question relates to the particular facts of this case and not any observations that Dr. Braaton made while treating Holcomb.

Holcomb argues that Dr. Braaton is simply stating that Holcomb's condition was the same as prior visits.

*Discussion*

The Court will overrule the objections. Defendants are correct that this excerpt is related to the excerpts discussed in the previous section (Page 45:16 to Page 46:5). However, the Court has found the preceding excerpt to be admissible. The entire sequence, lines 45:16 to 46:12, is simply conveying the idea that Holcomb's condition was essentially static, unchanged, or "stable" on or about May 7, 2012. Therefore, for the same reasons that Page 45:16 to Page 46:5 are admissible, lines 46:6 to 46:12 are admissible.

**CONCLUSION**

After review, some of the disputed excerpts are admissible and some are not. The parties will modify the video deposition of Dr. Braaton to reflect the rulings made by the Court, including removal of objections, where appropriate. If the video deposition cannot be easily modified, the

parties may simply read the relevant excerpt themselves.  There has now been extensive briefing and objections concerning Dr. Braaton.  As far as the Court is concerned, all issues concerning Dr. Braaton have been resolved.  The Court anticipates no for further issues concerning Dr. Braaton's *de bene esse* deposition.

# **ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1.  Defendants' objections to deposition excerpts 15:16-16:5, 17:5-17:12, 23:5 to 23:15, 28:7-28:20, and 29:10-30:18 are SUSTAINED and those excerpts are EXCLUDED from trial;

2.  Defendants' objections are otherwise OVERRULED;

3.  Plaintiff's objections to deposition excerpts 33:25 to 34:13, 38:3-5, 38:22-25, and 41:3 to 41:9 are SUSTAINED and those excerpts are EXCLUDED from trial; and

4.  Plaintiff's objections are otherwise OVERRULED.

IT IS SO ORDERED.

Dated:   July 10, 2017   

_____

SENIOR  DISTRICT  JUDGE